IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KURRI SKY BENNETT**                                                                **PLAINTIFF**

V.                                                                            CIVIL NO. 1:15-cv-233-JCG

**CAROLYN W. COLVIN,**                                                          **DEFENDANT**
**Acting Commissioner of Social**
**Security**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (ECF NO. 16) AND AFFIRMING THE
DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kurri Sky Bennett seeks judicial review of a decision by the Commissioner of the Social Security Administration, denying her claim for Supplemental Security Income under Title XVI of the Social Security Act (SSI), 42 U.S.C. § 1381-1383f. The Commissioner found that Plaintiff was not under a disability since September 6, 2012, the date the application was filed. Plaintiff has filed a Motion for Summary Judgment (ECF No. 16) and Memorandum (ECF No. 17), and the Commissioner has filed a Memorandum in Opposition (ECF No. 18). Having reviewed the administrative record, the submissions of the parties, and relevant law, the Court concludes that the decision of the administrative law judge (ALJ) is supported by substantial evidence and in accord with relevant legal standards. Plaintiff's Motion for Summary Judgment should be denied, and the decision of the Commissioner affirmed.

I.   BACKGROUND

Plaintiff filed an application for SSI on September 6, 2012, alleging disability

due to epilepsy, learning disabilities, and depression. (ECF No. 11, at 213). Plaintiff was 19 years old on the date the application was filed. She completed high school taking special education classes and received a certificate of completion but not a diploma. (ECF No. 11, at 34, 51, 64).

Following denial of her claim initially and on reconsideration, Plaintiff requested a hearing before an ALJ. ALJ William Wallis held a hearing on February 3, 2014. *Id.* at 28-57. Plaintiff appeared with counsel and testified. A vocational expert (VE) and Plaintiff's mother also testified.

On March 27, 2014, the ALJ issued a decision concluding that Plaintiff was not disabled from September 6, 2012, through the date of the decision. *Id.* at 23. The ALJ utilized the five-step sequential evaluation process to find Plaintiff not disabled. 20 C.F.R. § 416.920(a).[1] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id.* at 15. At step two, the ALJ found that Plaintiff had severe impairments of a seizure disorder, borderline intellectual functioning, an affective/mood disorder, and an anxiety disorder. *Id.* At step three, the ALJ concluded that Plaintiff's severe impairments did not meet the requirements for presumptive disability under the

---

[1] The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 416.920(a).

2

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 16-18.

Next, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Cannot be exposed to unprotected heights or moving machinery; cannot engage in commercial driving as a job requirement; can understand, remember, and carry out simple tasks and instructions; can attend, concentrate, and persist for two-hour periods; can at least occasionally interact with supervisors and coworkers; can complete a normal workweek without interruptions from psychologically-based symptoms; and can respond appropriately to at least occasional workplace changes.

*Id.* at 18.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . ." *Id.* at 20.

At step four, the ALJ found that Plaintiff had no past relevant work experience. *Id.* at 22. At step five, the ALJ relied upon the VE's testimony to find Plaintiff capable of performing simple, unskilled work that exists in significant numbers in the national economy, specifically dishwasher (850,000 jobs nationally), hand packager (300,000 jobs nationally), and assembler (6,000 jobs nationally). *Id.* at 22-23.

The Appeals Council denied Plaintiff's request for review, rendering the March 27, 2014, decision the final decision of the Commissioner. *Id.* at 5-7. Plaintiff timely commenced this suit seeking judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). Because both parties have consented under 28 U.S.C. § 636(c) to have a United States Magistrate Judge conduct all of the proceedings in this case, the undersigned has the authority to issue this opinion and the accompanying final judgment.

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence on the record as a whole to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). "'[S]ubstantial evidence' is less than a preponderance but more than a scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988)(quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to resolve. If the Commissioner's factual findings are supported by substantial evidence, they are conclusive and must be affirmed. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the issues *de novo*, or substitute

4

its judgment for the Commissioner's, "even if the evidence preponderates against the [Commissioner's] decision. *Bowling,* 36 F.3d at 434.

### III. DISCUSSION

A.    Listing 12.05(C)

At step three, the Commissioner considers the medical severity of the claimant's impairment(s) and determines whether the impairment(s) "meets or equals" a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). Plaintiff maintains that the ALJ erred when he found that Plaintiff did not meet or equal Listing 12.05(C).

"The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work." *Heckler v. Campbell,* 461 U.S. 458, 460 (1983). A claimant who establishes that she suffers from an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1, will be considered disabled without further inquiry. *Id.* The listings

> are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in term of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley,* 493 U.S. 521, 529 (1990).

The burden of proof to meet a listing is "demanding and stringent." *Falco,* 27

F.3d at 162. The responsibility for determining whether a claimant meets a listing is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2).

Listing 12.05 consists of an introductory paragraph or "capsule definition," setting forth the diagnostic criteria, followed by four "severity prongs" (paragraphs A through D). In order to satisfy Listing 12.05, the claimant must meet both the capsule definition and one of the four severity prongs. *Randall v. Astrue,* 570 F.3d 651, 659 (5th Cir. 2009). The version of Listing 12.05 in effect at the time Plaintiff filed her application for SSI on September 6, 2012, provides:

> **12.05 Mental Retardation:** Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function; . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05 (effective June 13, 2012, to April 4, 2013).

The ALJ found that Plaintiff did not meet the "capsule definition" of Listing 12.05(C)

> because the claimant's reported level of functioning is much greater. In her function report, she reported being able to play video games, communicate with others online via Facebook, and perform basic household chores (Exhibit

6

> B10E). She informed Dr. Matherne that she could dress without assistance (Exhibit B7F). The evidence of record also demonstrates that she has engaged in significant dating activities (Exhibits B8F, B11F). All of this tends to demonstrate greater functional abilities than those contemplated by this criterion.

(ECF No. 11, at 18).

The ALJ also found that Plaintiff did not meet the "paragraph C" criteria of Listing 12.05 because Plaintiff

> does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. While the claimant reportedly had a full scale IQ of 62 according to November 2009 testing (Exhibit B7F), the evidence of record demonstrates greater functional abilities than those generally consistent with a full scale IQ of 62.
>
> The evidence of record notes that she is able to date, performs household chores, engages in independent self-care, plays video games, and communicates with her friends online. This demonstrates significant adaptive functioning that is not consistent with subaverage general intellectual functioning with deficits in adaptive functioning.

(ECF No. 11, at 18).

The ALJ determined that Plaintiff's adaptive functioning was inconsistent with presumptive disability under Listing 12.05(C). Adaptive activities include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1

7

12.00(C)(1). The ALJ's determination that Plaintiff did not meet Listing 12.05(C) because her level of functioning was "much greater" is supported by substantial evidence, which the ALJ specifically cited to in his decision.

The ALJ cited a Function Report completed by Plaintiff on January 27, 2013. Plaintiff stated [all sic in original]:

> I play the video game for a little while. Then get on my computer and chat with my friends on Facebook. I go a take me a shower to fully wake up. I try to clean up my room then do dishes then clean up in the bathroom then do my laundry.

(ECF No. 11, at 249). Plaintiff reported that she dresses herself. *Id.* at 250. She stated that she can prepare simple meals "but have to be watch if I cook." *Id.* at 250-51. She can "do dishes," laundry, and "clean up." *Id.* at 251. She shops for clothes and personal items "once every couple weeks." *Id.* at 252. Plaintiff's mother stated that Plaintiff "must be supervised to ensure medication compliance, but that she is getting better with this." *Id.* at 19. The ALJ noted that, in June 2013, Plaintiff's mother reported a belief that Plaintiff was capable of more than she was actually doing. *Id.* at 419.

Plaintiff reported that her hobbies and interests include "computer games, watching movies/TV, on FB, hanging with friends." *Id.* at 255. Plaintiff told Dr. Matherne that she "spends time talking on the cellphone. She watches movies on her X-Box. . . . She does enjoy music and also enjoys playing the keyboard." *Id.* at 367. As support for his statement that Plaintiff "engaged in significant dating

activities," the ALJ cited to mental health case notes indicating that Plaintiff regularly discussed having a boyfriend and dating, including dating online. *Id.* at 380, 415, 421-22. The ALJ noted that in April 2013, Plaintiff was dating a man eight years her senior. *Id.* at 421.

Plaintiff objects to the findings of the Commissioner, on the basis that there was evidence in the record that could have supported a finding that Plaintiff met Listing 12.05(C). However, conflicts in the evidence are for the Commissioner to resolve. Plaintiff provides no case or statutory authority supporting her assertion that her ability to date, perform self-care, play video games, talk on the phone, and communicate online are not activities indicative of a greater level of functioning than contemplated by Listing 12.05(C). The ALJ's finding that Plaintiff does not meet the capsule definition's adaptive functioning criteria is supported by substantial evidence and is therefore conclusive. It is not necessary to discuss the severity prong criteria.

B.   <u>Evaluation of Expert Opinion Evidence</u>

The ALJ gave "significant weight" to the opinions of non-examining State agency consultants who concluded that "records support the presence of significant physical and psychological impairments that are generally well controlled with treatment." (ECF No. 11, at 22). The ALJ gave "less weight to the opinion of consultative examiner Dr. Matherne (Exhibit B7F), who opined after a single visit with Plaintiff that she had moderate impairment in her ability to interact with

9

others in the workplace and to perform routine, repetitive tasks." *Id.* Plaintiff maintains that "the ALJ failed to provide a sound explanation for discounting Dr. Matherne's opinion." (ECF No. 17, at 15). Plaintiff argues that the RFC should have included Dr. Matherne's opinion that Plaintiff was "moderately impaired" in her ability to perform routine, repetitive tasks and interact with coworkers and supervisors.

In evaluating a disability claim, an ALJ is to consider all medical opinions in the record. 20 C.F.R. §§ 404.1527(b) and 416.927(b). "[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker,* 660 F.2d 1078, 1084 (5th Cir. 1981).

The ALJ explained that he discounted Dr. Matherne's opinion that Plaintiff was "moderately impaired in her ability to perform routine, repetitive tasks" and "moderately impaired in her ability to interact with co-workers and supervisors" because "[t]he term moderate is vague." (ECF No. 11, at 22). In *Davis v. Colvin*, the Fifth Circuit found no reversible error where an ALJ made a similar ruling. 600 F. App'x 249, 250 (5th Cir. 2015). The ALJ in *Davis* did not allow the claimant's attorney to use the term "moderate" when cross-examining the VE because "moderate" is a medical term and not a vocational term. *See* Order [22] in *Davis v. Astrue,* No. 2:11-cv-2015 (W.D. La. July 18, 2013). The term "moderate," which was

10

used on a medical source statement, was not defined or translated into a vocational limitation of use to the VE.[2] The ALJ's finding here that the term "moderate" is vague in a vocational context is supported by *Davis*. The ALJ was not required to include limitations defined by this non-vocational term in the RFC.

The ALJ's conclusion in the RFC that Plaintiff "can understand, remember, and carry out simple tasks and instructions" and "can at least occasionally interact with supervisors and coworkers" is not an unsupported layman's opinion, as Plaintiff alleges. The ALJ adopted these findings from the non-examining State agency consultants, Amy Hudson, Ph.D., and Amy Morgan, Ph.D., who reviewed the entirety of Plaintiff's school, disability, and medical records, including Dr. Matherne's consultative exam report, and found:

> Per CE and 3ADLs, she is capable of managing personal care, playing video games, eating out, using a computer, simple food preparation, shopping, and counting change. She is supervised largely due to seizure risk. She is reportedly easily distracted. Moderate social, adaptive and cognitive limitations due to mild MR and adjustment DO w/ depressive features. Claimant would be capable of performing routine, repetitive tasks without excessive interruptions from psychologically based symptoms.

(ECF No. 11, at 115). Dr. Hudson and Dr. Morgan also concluded that Plaintiff "can concentrate and attend for 2-hour periods, interact with supervisors and coworkers at a very basic level, and adapt adequately in order to complete a normal work week without excessive interruption from psychologically based symptoms." *Id.* at 119,

---

[2] Words such as "frequently," "occasionally," and "never," are vocational terms used by the Department of Labor and the Dictionary of Occupational Titles.

11

131, 134.

The ALJ was allowed to rely on these non-examining State agency consultants' opinions because he adequately explained his reasons for discounting Dr. Matherne's opinion. The consultants' opinions are substantial evidence supporting the ALJ's RFC findings, and these findings are therefore conclusive. The Court may not reweigh the evidence.[3]

C. Credibility Determination

The ALJ concluded that Plaintiff was not capable of performing certain tasks but was not as limited as she alleged. (ECF No. 11, at 21). The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id.* at 20. Plaintiff contends that "the ALJ failed to support the conclusion that Plaintiff's allegations regarding seizures were not credible." (ECF No. 17, at 16).

The ALJ cited to the record where he found inconsistencies supporting his credibility determination. The ALJ noted that in a September 2013 seizure report, Plaintiff indicated that she had daily seizure events, yet her last noted seizure event was over two weeks prior to the report's date. (ECF No. 11, at 19, 270-71).

---

[3] Plaintiff provides no case or statutory authority to support her allegation that "playing a video games does not correlate with performance of simple, routine, work-related tasks on a regular and continuing basis . . . ." (ECF No. 17, at 14).

12

Plaintiff's mother reported that while Plaintiff experiences seizures, she "can go for months without a seizure event." *Id.* at 19. In an October 2012 treatment note, Plaintiff stated to a mental health professional that her last seizure was about a year before. *Id.* at 382. Plaintiff told Dr. Matherne that she experienced seizures "from time to time." *Id.* at 366.

The ALJ compared the witnesses' statements to the record evidence and properly performed his function as the trier of fact to make a credibility determination. The ALJ's credibility determination is entitled to considerable deference because the ALJ was present and enjoyed the benefit of observing the witnesses' person and testimony at the hearing. *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir. 1983). Plaintiff objects to the ALJ's credibility determination on the basis that there was evidence in the record that could have supported a different finding. However, conflicts in the evidence are for the Commissioner to resolve. The evidence supporting the ALJ's credibility determination easily exceeds "more than a mere scintilla" of evidence, and the finding is therefore conclusive. *Bowling,* 36 F.3d at 434. The Court may not reweigh the evidence.

D.  <u>Hypotheticals to the VE</u>

To determine the extent to which Plaintiff's limitations eroded the occupational base, the ALJ relied on the testimony of a VE who found that jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (ECF No. 11, at 23). Plaintiff maintains that "the VE's

13

testimony was in response to an incomplete hypothetical question that did not account for all of Plaintiff's limitations." (ECF No. 17, at 16). As already discussed, the Commissioner's findings regarding Plaintiff's limitations are supported by substantial evidence. The ALJ need only incorporate into a hypothetical the impairments he finds supported by substantial evidence. *Masterson v. Barnhart,* 309 F.3d 267, 273-74 (5th Cir. 2002). Given that the ALJ posed hypotheticals to the VE that reasonably incorporated the restrictions that the ALJ recognized, the ALJ properly relied on the VE's testimony to deny Plaintiff's claim. *Bowling,* 36 F.3d at 435.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED** and the decision of the Commissioner **AFFIRMED**.

**SO ORDERED**, this the 22nd day of February, 2017.

/s/ *John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE